IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN TAMPICO, | : | CIVIL ACTION NO. **1:CV-04-2340** |
| Plaintiff | : | (Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| D. SCOTT DODRILL, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background**.

The Plaintiff, a federal inmate formerly incarcerated at the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), filed this *Bivens*[1] action, *pro se*, pursuant to 28 U.S.C. § 1331 on October 25, 2004. Plaintiff originally named as Defendants three (3) individuals employed by the federal Bureau of Prisons ("BOP"), one of whom was also employed at FCI-Schuylkill. (Doc. 1). Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). [2]

Since the Plaintiff filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the Prison Litigation Reform Act of 1995 (the "Act")[3] obligated the Court to engage in a screening process.

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

[2] Plaintiff is currently incarcerated at USP-Lewisburg. (Doc. 31).

[3] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

In reviewing the complaint under 28 U.S.C. §1915(e)(2)(B), we found that the Plaintiff was unable to maintain his action as against Defendants Dodrill and Lappin, and that Plaintiff's Fourteenth Amendment, Eighth Amendment and First Amendment claims as against Defendant Warden Holt proceed. (Doc. 9). On May 20, 2005, the District Court adopted our recommendations. (Doc. 19). This case was remanded to the undersigned. Time was allotted for discovery, and this time had now elapsed.

On July 13, 2005, Defendant Holt filed a Motion for Summary Judgment. (Doc. 26). Defendant also filed a Statement of Material Facts ("SMF") with exhibits, as required, as well as a support Brief. (Docs. 28, 29). Plaintiff filed his opposition brief on August 15, 2005 with exhibits attached. (Doc. 31). Defendant timely filed a Reply Brief. (Doc. 33).[4]

## II. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem*.

---

[4]Plaintiff did not file a responsive SMF to Defendant's SMF and thus, under Local Rule 56.1, we deem him as admitting Defendant's statements. We also note that each of Defendant's SMF are supported by referenced evidence as required. (Doc. 29).

725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id.*, *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

### III. *Bivens* Standard.

The District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*.  Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official."  *Butz v. Economou*, 438 U.S. 478, 504 (1978).  A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply.  *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him

of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young,* 809 F.Supp. at 1199. Additionally, a defendant's conduct must have a close causal connection to the plaintiff's injury in order for liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).

The sole remaining Defendant is Ronnie Holt, Warden at FCI-Schuylkill. (Doc. 1, p. 2). Plaintiff's claims against Defendant Holt are based on the First Amendment, Eighth Amendment and Fourteenth Amendment. We shall reiterate Plaintiff's allegations with respect to each of his three constitutional claims.

### IV. Allegations of Complaint.

The Plaintiff alleged that on July 24, 2003, after being transferred to FCI-Schuylkill three weeks earlier, he was threatened by unknown inmates and had to be placed in protective custody in the Special Housing Unit ("SHU").[5] After his release from the SHU on October 1, 2003, Plaintiff stated that he was again threatened by inmates and had to re- seek protective custody in the SHU. Plaintiff averred that he has been in the SHU ever since. (Doc. 1, p. 4, ¶ IV.).[6] Plaintiff claimed

---

[5]Defendant's evidence shows that, after he requested protective custody, Plaintiff was placed in administrative detention ("AD") in the SHU at FCI-Schuylkill on September 24, 2003 and not on July 24, 2003. (Doc. 29, ¶ 4.). In fact, Plaintiff did not arrive at FCI-Schuylkill until Sepmber 2, 2003. (*Id*., ¶ 2.).

[6]In his August 2005 opposition Brief to Defendant's present Summary Judgment Motion, Plaintiff states that as of September 2005, he was confined in the SHU for two years. (Doc. 31, p. 19). Plaintiff also states that he is not due for a transfer to another prison until January 2006. Notwithstanding Plaintiff's claim, Defendant's evidence shows that on December 20, 2004, Plaintiff was transferred from FCI-Schuylkill to USP-Lewisburg. (Doc. 29, ¶ 2.).

that since he was convicted of child pornography related offenses, he received the threats from the other inmates and was forced to seek protective custody at FCI-Schuylkill.

Plaintiff claims that Defendant Holt is violating BOP policy by refusing to transfer him to another prison within ninety (90) days as required by BOP P.S. 5270.07. Plaintiff alleges that prison officials told him that he must remain in the SHU for twelve (12) months and not receive any disciplinary infractions in order to be transferred to another prison. (Doc. 1 at p. 5). Plaintiff stated that he completed the twelve (12) months time in the SHU "discipline-free" and that despite this, no transfer application on his behalf was submitted. Plaintiff claimed that a Regional BOP policy was responsible for his continued stay in the SHU, which policy requires an inmate placed in the SHU for protective custody remain there for twelve (12) to eighteen (18) months without disciplinary infraction before a transfer request is made.

Plaintiff claimed that the BOP is violating his Fourteenth Amendment equal protection rights by not providing a prison where inmates convicted of child pornography offenses can serve their time out of protective custody and ensure that such inmates have the same freedom of movement and access to programs as other inmates. (*Id.*). Plaintiff also claimed that the BOP policy requiring him to remain in the SHU for twelve (12) to eighteen (18) months before transferring him, and which results in a "constant state of overcrowding in the SHU facilities," imposed undue hardships on inmates. Plaintiff averred that SHU inmates are made to sleep on the floor and that inmates were not being provided with the required minimum square footage per inmate. We construed these claims as an Eighth Amendment challenge to conditions of confinement. (*Id*. at p. 6).

5

Plaintiff also stated that while being required to stay in the SHU on protective custody, he was denied of privileges which other inmates in the general population receive such as newspapers, magazines, games, hobby programs and televisions. Plaintiff also stated that he has been prevented from receiving his magazines, to which he had seven (7) subscriptions, and that he has not been compensated for this loss by the prison. (*Id*. at pp. 6-7). The Plaintiff claimed that the lack of magazines in the SHU was a violation of his First Amendment rights. (*Id*. at p. 7).

As relief, Plaintiff sought monetary damages as well as injunctive relief in the nature of a court order that Defendant transfer him to another prison where he has the same privileges that general population inmates have, and if no such prison exists, to create one; that the BOP discontinue their policy of holding protective custody inmates in the SHU twelve (12) to eighteen (18) months pending transfer; and that Defendant Holt be required to allow inmates in the SHU to possess magazines. (*Id*. at p. 8).[7] Plaintiff did not specify if he named Defendant Holt in his

---

[7]Plaintiff sought injunctive relief against Defendant Holt. Doc. 1, p. 8. The Plaintiff also claimed that all of the Defendants refused to transfer him to another facility even though he has remained in the SHU for 12 months without a disciplinary infraction. (Doc. 1, p. 5.). As we previously noted, to the extent that Plaintiff requested a transfer to another prison as part of his request for injunctive relief (Doc. 1, p. 8), the law is clear that he has no right to such relief. It is well-settled that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983). Notwithstanding *Olim*, the evidence in our case, as discussed below, shows that soon after Defendant Holt arrived at FCI-Schuylkill, he did in fact order Plaintiff's transfer to another prison, and Plaintiff was transferred.

We further note that with respect to Plaintiff's injunctive relief request, as the Court stated in *Sutton v. Rasheed*, 323 F. 3d 236, 248 (3d Cir. 2003), "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims." (Citation omitted). However, such claims are not mooted if, in part, "there [is] a reasonable likelihood that the same complaining party would be subjected to the same action again." *Id*. (Citations omitted). Defendant must show that "there is no reasonable expectation that the wrong will be repeated." *Id*. (Citations omitted). *See also Foster v. Morris*, 2005 Wl 2334954 *5 (M.D. Pa.). In our case, since Plaintiff is no longer an inmate at FCI-Schuylkill, his request that Defendant Holt be

individual and/or official capacities.  (*Id.*, pp. 2, 8).[8]

As mentioned, in our prior Report and Recommendation, we found that Plaintiff had sufficiently stated an Eighth Amendment conditions of confinement claim, a Fourteenth Amendment equal protection claim, and a First Amendment claim of denial of magazines while he was in the SHU against Defendant Holt.[9]  The District Court agreed with our Report and

---

ordered to allow inmates in AD at this prison to possess magazines is moot. (Doc. 1, p. 8, ¶ 3.). Insofar as Plaintiff claims that this same policy exists at USP-Lewisburg, he can pursue a separate action against the responsible prison officials after he exhausts his administrative remedies.
    Plaintiff also requested, as part of his injunctive relief, that he be allowed the same "measure of freedom and security common to the mainstream of federal inmates" which, according to the body of his Complaint, included  the right to participate in "hobby programs." (*Id*. at pp. 6,& 8). "The control of prison educational and rehabilitation programs is a matter of prison administration and does not rise to the level of a federal claim in most instances." *Coffey v. Ingram*, WL 82855, *1 (E.D. Pa. 1988) (Citing *Hayes v. Cuyler*, 475 F.Supp. 1347, 1350 ( E.D. Pa. 1979).  We noted in our prior Report and Recommendation that since the Plaintiff was alleging that the stated program was administered in a manner that violated his constitutional rights, *i.e.* his Fourteenth Amendment equal protection right, he had stated a cognizable claim and may seek injunctive relief directing his participation in the hobby program. We also noted the case of  *Loe v. Wilkinson*, 604 F. Supp. 130, 136 (M.D. Pa. 1984) (if extra restrictions are placed on inmate during his stay in administrative detention in the SHU that are not placed on inmates in the general population, such as lack of educational programs and diminished phone and library privileges, were a necessary part of prison security, then they do not amount to an Eighth Amendment violation).  However, the evidence now presented, as addressed below, shows that Defendant Holt was not personally involved in denying Plaintiff participation in prison programs at FCI-Schuylkill.


    [8]Defendant concedes that Plaintiff has exhausted his available administrative remedies with respect to all of his three claims at issue herein. (Doc. 28, p. 2, n. 3).


    [9]In our prior Report and Recommendation, we noted that in *Procunier v. Martinez*, 416 U.S. 396 (1974), the Court allowed censorship of prison mail if the prison regulation was in furtherance of a substantial governmental interest unrelated to suppression of expression and the restrictions were no greater than necessary to protect the governmental interest at issue. We also noted that in *Gray v. Creamer*, 376 F. Supp. 675 (W.D. Pa. 1974), the Court held that

Recommendation. (Doc. 19).

**V. Statement of Material Facts.**

As noted above, since Plaintiff failed to file his response to Defendant's SMF, and since Defendant has properly supported his facts by reference to his evidence, we have deemed Defendant 's SMF as admitted by Plaintiff. *See* Local Rule 56.1. Thus, we shall incorporate by reference Defendant's SMF. (Doc. 29). Of significance, we find the following material facts:

> 7. Warden Holt began working at FCI Schuylkill on August 8, 2004. See Ex. 2 (Holt Decl.) ¶ 1.
>
> 8. On October 25, 2004, Warden Holt signed a transfer order authorizing Tampico's transfer from FCI Schuylkill to USP Lewisburg. See id. ¶ 4; see also Ex. 1 (Ante Decl.) ¶ 7.
>
> 9. The Northeast Regional Office approved the transfer on October 26, 2004. See id. ¶ 7.
>
> 10. Tampico remained in the SHU until the time of his transfer. See id.
>
> 11. Tampico arrived at USP Lewisburg on December 20, 2004. See id.
>
> 12. A review of the inmate personal property record documenting Tampico's property when he arrived at FCI Schuylkill indicates that Tampico did not own any magazines at that time. See id. ¶ 8.
>
> 13. The inmate personal property records documenting Tampico's property prior to his transfer to USP Lewisburg indicates that Tampico owned 9 magazines. See id.

---

the standard announced in *Procunier, supra*, applied to an inmate's receipt of magazines. As noted above, because Plaintiff is no longer incarcerated at FCI-Schuylkill, his First Amendment claim for injunctive relief against Defendant Holt is moot.

>    14.    Tampico signed these forms indicating that he reviewed
>           the property to verify their accuracy.  See id.

(Doc. 29, ¶'s 7.-14.).

## VI. Discussion.

*A. Defendant Holt's Personal Involvement*

As stated, Plaintiff did not indicate in his Complaint if he named Holt as a Defendant in his individual and/or official capacities.  In his Brief, Plaintiff argues that he intended to name Defendant both in his official and individual capacities based on his requested relief, *i.e.* injunctive and monetary. (Doc. 31, p. 17).  Defendant first argues that he is entitled to judgment as a matter of law since Plaintiff's claims against him do not sufficiently allege his personal involvement.  (Doc. 28, p. 5).

It is undisputed that Defendant Holt did not begin working at FCI-Schuykill until August 8, 2004. (Doc. 29, ¶ 7.).  Plaintiff seemingly concedes this fact and recognizes his deficiency in his pleading with respect to Holt's lack of personal involvement in his claims, and has filed a Motion to Add Defendant, namely John Nash, former warden at FCI-Schuylkill.  (Doc. 32).  As correctly noted by Defendant in his Reply Brief (Doc. 33, pp.2-3, n. 2), Plaintiff did not file a brief in support of this Motion as required by Local Rule 7.5, M.D. Pa.  Thus, we deem the Motion as withdrawn. Nor did Plaintiff state any allegations as to former warden Nash or state Nash's personal involvement in any of his claims.  We also find that at this stage of the case, *i.e.* discovery has ended and the dispositive motions deadline has passed, it would be very prejudicial to Defendant to now add a new Defendant and be required to re-litigate this entire case.  For these reasons, we shall

recommend that Plaintiff's Motion to Add Defendant (Doc. 32) be denied.[10]

Defendant states that Plaintiff's administrative remedies relating to Plaintiff's pending transfer and his remedies regarding the failure to give him his magazines while he was in AD, were both responded by prison staff before he [Holt] ever arrived at FCI-Schuylkill. (Doc. 28, p. 6). Defendant further states that on October 25, 2004, one month and eighteen days after he became warden at FCI-Schuylkill, he signed an order for Plaintiff's transfer from FCI-Schuylkill to USP-Lewisburg. (*Id.*). Defendant's referenced evidence in his SMF, as detailed above, substantiates Defendant's statements in his Brief. (Doc. 29, ¶'s 7.-8.). Plaintiff's transfer order that Defendant Holt signed was approved by BOP on October 26, 2004, Plaintiff remained in the SHU pending his transfer, and Plaintiff was transferred to USP-Lewisburg on December 20, 2004. (*Id.*, ¶'s 9.-11.).

Moreover, the undisputed evidence reveals that when Plaintiff was transferred from FCI-Schuylkill to USP-Lewisburg, he had nine (9) magazines with his personal property and when Plaintiff first arrived at FCI-Schuylkill, he did not possess any magazines. (*Id.*, ¶'s 12.-13.). Plaintiff signed personal property records, which proves these facts. (Doc. 29, Ex. 1, Attachment 3).

We agree with Defendant that the evidence does not show that he was sufficiently personally involved with any of Plaintiff's constitutional claims in this case, and that he is therefore entitled to summary judgment in his favor. *See Sutton*, 323 F. 3d at 249-250.

---

[10] Previously, we denied Plaintiff's Motion to Supplement his Complaint by adding new claims arising from his confinement at USP-Lewisburg. (Doc. 24). Plaintiff can file a separate action as to any new claims he has regarding his confinement at his new prison, unrelated to the claims of this case which all occurred during his confinement at FCI-Schuylkill, and unrelated to our remaining Defendant, after he exhausts his administrative remedies with the BOP.

There are no undisputed facts presented which show that Defendant Holt was sufficiently personally involved in this case. Rather, Plaintiff has attempted to name this Defendant due to his supervisory role with the prison.

Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* Courts have also held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to liability. *See Rode,* 845 F.2d at 1208. Permitting supervisory liability where a defendant, after being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement. *See Rizzo v. Goode*, 423 U.S. 362 (1976).

Courts have held that an allegation seeking to impose liability on a defendant based on supervisory status, without more, will not subject the official to section 1983 liability. *See Rode,* 845 F.2d at 1208; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (per curiam) (a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of section 1983).

11

As stated, *respondeat superior* is not a basis to hold a Defendant liable in a civil rights action. *See Rizzo,* 423 U.S. at 377.  Plaintiff does not show through any evidence that the remaining supervisory Defendant, Warden Holt, had a sufficient nexus to his constitutional claims necessary for liability to attach to him.  *See Martinez, supra.*  Plaintiff does not show that Defendant Holt had any involvement with the claimed failure of the prison to submit him for a transfer after he remained in the SHU for twelve (12) months with clear conduct.  The Plaintiff does not show that Defendant Holt had any involvement with the overcrowded conditions in the SHU at FCI-Schuylkill.  Nor does Plaintiff show any involvement that Defendant Holt had with his First Amendment claim that he was denied his magazines while in the SHU.  *See Rizzo, supra.*

Insofar as Plaintiff's Eighth Amendment claims relating to his prolonged stay in the SHU and the conditions of confinement in the SHU, and his First Amendment claim that the denial of his magazines in the SHU violated his free speech and free press rights, Defendant Holt has demonstrated through his evidence that he cannot be held liable, since he did not have any personal involvement with these claims.  *See Sutton v. Rasheed*, 323 F. 3d 236 (3d Cir. 2003).

According to an exhibit attached to Plaintiff's Complaint, former Defendant Dodrill responded to the Plaintiff's administrative remedy appeal of the former Warden's decision to continue his placement in the SHU for twelve (12) months with clear conduct.  (Doc. 1, attached February 11, 2004, Response of Defendant Dodrill to Plaintiff's Administrative Remedy Appeal # 317804-R2)).  The Plaintiff also attached to his Complaint a second Response of former Defendant Dodrill to another one of his Administrative Remedy Appeals in which he claimed that he was not allowed by the former Warden to receive his magazines while in the SHU.  (Doc. 1, attached

February 11, 2004, Response of Dodrill to Plaintiff's Administrative Remedy Appeal # 317803-R2). As Defendant states in his Brief, both of these responses were made before he [Holt] was ever assigned to FCI-Schuylkill.

Since Defendant Holt did not even respond to Plaintiff's Administrative Remedy Appeals regarding the decisions to keep him in the SHU and to prohibit magazines in the SHU, there is not any evidence to show Defendant Holt's personal involvement in this case. *See Rizzo, supra*. Clearly, a supervisory prison official does not have personal involvement necessary for a civil rights action based only on the responses to administrative remedy appeals of his predecessor.[11]

Plaintiff argues in his Brief that, despite the fact that he had nine (9) magazines with his property, and despite the fact that Defendant did not take the magazines, he was prevented from reading them in the SHU. (Doc. 31, p. 16). However, the evidence has shown that Defendant Holt was not personally involved with the decision in this case to restrict Plaintiff's magazines while he was in the SHU. (Doc. 31, Ex. B 17).

Defendant Holt has not been shown by Plaintiff to have been personally involved in the failure to transfer Plaintiff after twelve (12) months of clear conduct or to have been responsible for any of the conditions in the SHU which Plaintiff alleged violated the First Amendment, Eighth Amendment, and Fourteenth Amendment. *Id*. Therefore, Defendant Holt's Summary Judgment

---

[11] We find no exhibit attached to Plaintiff's Brief (Doc. 31) in which Defendant Holt is implicated in any of the Plaintiff's administrative appeals. Further, in his Declaration attached to his Brief (Doc. 31, Ex. B2), Plaintiff avers that upon his arrival at FCI-Schuylkill, he was "triple bunked" which periodically continued and when he was triple bunked, there was not enough room in the cell to move about. However, Defendant Holt is not averred to be personally involved in Plaintiff's triple bunking or cell over crowding.

Motion should be granted.

In his opposition Brief, Plaintiff attempts to show Defendant Holt's personal involvement by arguing that since Holt was warden at another prison before he was transferred to FCI-Schuylkill, he was aware of BOP's regional policy at issue and that "he therefore had a responsibility to immediately cancel the Regional policy, to hew to the national regulation, and to effect Plaintiff's transfer." (Doc. 31, p. 4). Plaintiff also states that he questioned Defendant Holt about SHU policies (*i.e.* "12-18 month SHU policy" and "lack of magazines") but that he received a "flippant response" from Defendant. (*Id*. & Ex. B 18). In his Declaration attached to his Brief, Plaintiff avers that he asked Defendant Holt if he was going to change any "ridiculous SHU policies" and Holt responded that he would have to find out what the polices were. (*Id*.). As Defendant points out in his Reply Brief, the evidence reveals that within one month and eighteen (18) days after arriving at FCI-Schuylkill, he signed Plaintiff's transfer order. (Doc. 33, p. 5). There is no evidence presented by Plaintiff that Defendant Holt had any authority or obligation to change any BOP Regional Policy. Additionally, based on the undisputed limited personal involvement of Defendant Holt with Plaintiff's claims, we find that he is entitled to judgment in his favor.

Further, Plaintiff now argues that his transfer to USP-Lewisburg was "completely inappropriate" because he had requested a transfer to a prison where he could function in the general population, and "Lewisburg guaranteed the opposite." (Doc. 31, p. 5). Plaintiff states that his "management variable" was removed to effectuate his transfer to USP-Lewisburg so that he could be moved to a higher security prison. (*Id*.). However, Defendant indicates that Plaintiff's own evidence shows that his security classification has been "High" as of December 18, 2000.

(Doc. 31, Ex. B 9).  We agree with Defendant.  Thus, Plaintiff's transfer by Defendant Holt to a high security prison, USP-Lewisburg, was consistent with his existing security classification.

## VII. Recommendation.

Based on the foregoing, it is respectfully recommended that Defendant Holt's Motion for Summary Judgment **(Doc. 26)** be granted, and that Judgment be entered in favor of Defendant and against Plaintiff with respect to the Fourteenth Amendment, Eighth Amendment and First Amendment claims against Defendant Warden Holt.  It is also recommended that Plaintiff's Motion to Add Defendant **(Doc. 32)** be denied.

> **s/ Thomas M. Blewitt**
> **THOMAS M. BLEWITT**
> **United States Magistrate Judge**

**Dated: December 15, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN TAMPICO, | : | CIVIL ACTION NO. **1:CV-04-2340** |
| Plaintiff | : | (Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| D. SCOTT DODRILL, et al., | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 15, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

               <u>s/ Thomas M. Blewitt</u>
               **THOMAS M. BLEWITT**
               **United States Magistrate Judge**

**Dated: December 15, 2005**