IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN TAMPICO | : | |
| | : | |
| **Plaintiff** | : | |
| | : | CIVIL ACTION NO. 1:04-CV-02340 |
| v. | : | |
| | : | (Judge Kane) |
| RONNIE R. HOLT[1] | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

Before the Court are the Defendant's motion for summary judgment (Doc. No. 26) and a Report and Recommendation from Magistrate Judge Blewitt (Doc. No. 36) recommending that Defendant's motion be granted. Also before the Court are the Plaintiff's Objection to Report and Recommendation (Doc. No. 38) and the Defendant's Brief in Opposition to Plaintiff's Objection to the Magistrate Judge's Report and Recommendation (Doc. No. 39).

**I.   Factual Background**

On October 25, 2004, Plaintiff filed this action pursuant to 28 U.S.C. § 1331 against three employees of the Federal Bureau of Prisons ("BOP"). On May 5, 2005, the Plaintiff's claims against two of the defendants were dismissed for failure to state a claim.

Plaintiff is currently serving a thirty-year sentence for possession of child pornography in violation of 18 U.S.C. 2252-2252A. On September 2, 2003, Plaintiff was transferred to FCI-Schuylkill. Plaintiff avers that at FCI-Schuylkill he was subjected to threats of physical violence from inmates due to the nature of his offense. To ensure Plaintiff's safety, he was placed in the

---

[1] This action originally named three defendants. Plaintiff's claims against Defendants Lappin and Dodrill were dismissed.

Special Housing Unit ("SHU").  Plaintiff also requested a transfer to a different correctional facility.  As a result of the threats and Plaintiff's requests, it was determined that Plaintiff would have to remain in the SHU disciplinary-free for twelve to eighteen months before his transfer request would be considered.

Defendant Warden Holt, began working at FCI-Schuylkill on August 8, 2004.  On October 25, 2004, Warden Holt authorized Plaintiff's transfer to USP-Lewisburg.  The transfer was approved by the regional office on October 26, 2005, and Plaintiff was transferred to USP-Lewisburg in December, 2005.

In his complaint, Plaintiff contends that the regional BOP policy requiring inmates to spend twelve to eighteen months in SHU while awaiting transfer violates his Fourteenth Amendment right to equal protection, because BOP policy ordinarily permits detention in the SHU for only 90 days.  Plaintiff also contends that this policy leads to overcrowding in the SHU and that Plaintiff was forced to sleep on the floor and denied the required minimum square footage per inmate.  Plaintiff also claims that while in the SHU he was denied access to magazines in violation of his First Amendment rights.

Plaintiff asks the Court to: (1) order his immediate transfer out of FCI-Schuylkill to a facility "where he would have the measure of freedom and security common to the mainstream of federal inmates; and, if such a facility does not exist, to establish an appropriate institution without delay;" (2) order the Northeast Region of the BOP to discontinue its policy of holding inmates in the SHU for twelve to eighteen months pending transfer; (3) order Warden Holt to allow possession of magazines by inmates in the SHU; and (4) award Plaintiff monetary damages for his unlawful detention, missed educational opportunities, and deprivation of

magazines.  Plaintiff also seeks reimbursement of postage and photocopying costs.

## II.     Motion for Summary Judgment

Defendant Holt asserts he is entitled to summary judgment for three separate reasons. First, Defendant Holt argues that he was not personally involved in the alleged deprivation of Plaintiff's constitutional rights, because he did not become Warden at FCI-Schuylkill until August 8, 2005, less than ninety days before Plaintiff's transfer to USP-Lewisburg.  Secondly, Defendant Holt asserts that Plaintiff has failed to state a claim because Plaintiff's claims to not rise to the level of Constitutional violations.  Finally, Defendant Holt contends that he entitled to qualified immunity from Plaintiff's claims.

## III.    Magistrate Report & Recommendation

Magistrate Judge Blewitt recommends that Defendant's motion for summary judgment be granted, and judgment be entered in favor of Defendant Holt.  This recommendation is based on Judge Blewitt's finding that there are no undisputed facts bearing on the issue of whether Defendant Holt was personally involved in the alleged deprivation of Plaintiff's rights. Furthermore, Judge Blewitt also found that Defendant cannot be liable based only on his supervisory position, and Plaintiff has not shown that Defendant had a "sufficient nexus to his constitutional claims necessary for liability to attach to him." (Doc. No. 36 at 12).

## IV.     Discussion

### A.     Defendant was not personally involved in deprivation of Plaintiff's rights.

In his objection to Judge Blewitt's Report and Recommendation, Plaintiff's main argument is that Defendant was personally involved in the alleged Constitutional violations, and, accordingly, summary judgment is not appropriate.  Plaintiff also makes several objections, many

of which are outside the scope of this action, legally meritless, or not based on facts in the record. Plaintiff also concedes that his claims for injunctive relief are moot.

This Court finds no merit to Plaintiff's objections. A defendant will not be liable in a civil rights action unless the defendant had "personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through personal direction or actual knowledge and acquiescence, but personal involvement cannot be based on respondeat superior. Id.

Plaintiff does not dispute the relevant facts. Defendant Holt became Warden at FCI-Schuylkill on August 8, 2004. Less than two months later, Defendant approved Plaintiff's transfer to USP-Lewisburg. Furthermore, there are no undisputed facts to show that Defendant Holt was involved in any manner other than through his position as Warden. It is undisputed that Plaintiff's grievances and resulting administrative remedies related to Defendant's predecessor, Warden Nash. Moreover, Plaintiff has pointed to no facts that show Defendant had actual knowledge of Plaintiff's complaints.

Plaintiff contends that Defendant's personal involvement was not based solely on respondeat superior. Instead Plaintiff argues that Defendant had knowledge of the deprivation of Plaintiff's rights and that he acquiesced in the deprivation and failed to provide a remedy. Although knowledge and acquiescence may be a basis for supervisor liability, see Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976), Plaintiff has not provided any facts to show that Defendant had actual knowledge. Additionally, Defendant did, in fact, provide Plaintiff with a remedy by approving his request for a transfer to another correctional facility.

    **B.**    **Plaintiff's claims do not rise to the level of Constitutional violations.**

This Court also finds that Plaintiff's claims do not rise to the level of Constitutional violations. Plaintiff's complaint asserted violations of the Eighth, Fourteenth and First Amendments. These claims will be addressed briefly below.

### 1. Plaintiff's Eighth Amendment Claim

Construed liberally, Plaintiff's complaint alleges that the requirement that inmates remain in SHU for twelve months prior to transfer results in overcrowding and increased hardship on inmates in violation of the Eighth Amendment.

The Eighth Amendment does not guarantee that prison conditions be comfortable, only that the conditions not be inhumane. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official cannot be liable for denying humane conditions of confinement unless the official disregards an excessive risk to the inmate's health or safety. Id. at 837. Furthermore, the Eighth Amendment requires prison officials to take measures to guarantee the safety of inmates. Id. at 832.

Plaintiff has not pointed to any evidence to support his allegations of constant overcrowding, nor has he shown that there was an excessive risk to his health or safety during his confinement in the SHU. At most, the evidence suggests that Plaintiff's health and safety remained at risk if he was housed in the general population rather than in the SHU.

### 2. Plaintiff's Fourteenth Amendment Claim

Plaintiff alleges that the Fourteenth Amendment guarantees him the "same freedom of movement and access to programs and training as any other federal inmate." (Doc. No. 1 at 5) The Fourteenth Amendment does not grant inmates the right to chose their correctional facility. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (stating that a prisoner has "no justifiable

expectation that he will be incarcerated in any particular prison"). Furthermore, prison officials have broad discretion in issues regarding inmate housing. See McKune v. Lile, 536 U.S. 24, 39 (2002). As discussed above, prison officials have a duty to ensure inmate safety.

Given the threats directed toward Plaintiff and Plaintiff's request for protection, this Court finds that it was reasonable to keep Plaintiff in the SHU in order to ensure his safety. This protective measure necessarily removes inmates from the general prison population and restricts their freedom of movement. The Court finds nothing in the record that supports Plaintiff's claims that his rights under the Fourteenth Amendment were violated by remaining housed in the SHU.

### 3.     Plaintiff's First Amendment Claim

Plaintiff also alleges that his First Amendment rights were violated because he was denied access to magazines while in the SHU.[2] Plaintiff is correct that restrictions on magazines and newspapers, unless reasonably related to a legitimate penological purpose, may violate the First Amendment. Banks v. Beard, 399 F.3d 134, 139 (3d Cir.), cert. granted, 126 S. Ct. 650 (2005). However, Plaintiff has failed to produce more than mere allegations that Defendant actually restricted access to magazines and newspapers. The Plaintiff relies on the policy of Defendant Holt's predecessor to demonstrate a policy banning magazines and newspapers in the

---

[2]Plaintiff originally requested injunctive relief requiring the prison to allow magazines in the SHU and monetary compensation for lost issues. As noted above, Plaintiff has conceded that his claims for injunctive relief are moot as a result of his transfer. Plaintiff acknowledges that he has no problems with access to magazines and newspapers at his new facility. (Doc. No. 31 at 14-15). Additionally, Plaintiff has not provided any evidence to support his allegations that he lost any issues from his magazine subscriptions. The undisputed evidence shows that Plaintiff did have nine magazines in his possession at the time of his transfer to USP-Lewisburg. (Doc. No. 29, Def. Attach. 3). Therefore, even if successful on the merits of his claim, Plaintiff would not be entitled to compensatory damages since he suffered no harm.

SHU. (Doc. No. 31 Attach. B14). In contrast, Plaintiff has not demonstrated that Defendant Holt has maintained this policy, which appears to conflict with the national policy submitted by Defendant, which permits newspapers and magazines in the SHU unless it would post a threat to inmate safety. (Doc. No. 29 Ex. 4 at 20). Nothing in the record supports Plaintiff's claim that Defendant Holt has restricted access to newspapers or magazines.

### C.   Motion to Add New Defendant

In Plaintiff's Objection to Motion for Summary Judgment (Doc. No. 31), Plaintiff seeks to add John Nash, Warden Holt's predecessor at FCI-Schuylkill. Additionally, Plaintiff formally moved to add John Nash as a Defendant. (Doc. No. 32). Since a responsive pleading has already been filed, the Plaintiff must have permission from the court to amend his complaint, and the court should allow amendments when "justice so requires." Fed. R. Civ. P. 15. This Court finds that justice does not require that Plaintiff be allowed to amend his complaint. This lawsuit was originally filed on October 25, 2004. Plaintiff's Motion to Add New Defendant was filed August 15, 2005, 10 months later. Plaintiff's motion offers no reason why Plaintiff could not have named Nash in the original complaint. At the time he filed the original complaint, Plaintiff knew that the alleged violations occurred primarily during Warden Nash's tenure. Additionally, since none of Plaintiff's claims rise to the level of Constitutional violations, this Court does not find that Plaintiff has demonstrated a genuine cause of action against the proposed defendant.

**V.      Order**

For all of the foregoing reasons, **IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation (Doc. No. 36) is **ADOPTED**;

2. Plaintiff's Objections to the Report and Recommendation (Doc. No. 38) is **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. No. 26) is **GRANTED**;

4. Plaintiff's Motion to Add Defendant (Doc. No. 32) is **DENIED**; and

5. The Clerk of Court is directed to enter Judgment in favor of Defendant and to close the file.


      S/ Yvette Kane
      Yvette Kane
      United States District Judge

Dated: March 31, 2006